FUJIWARA AND ROSENBAUM, LLLC

ELIZABETH JUBIN FUJIWARA 3558
JOSEPH T. ROSENBAUM 9205
1100 Alakea St., 20th Fl., Ste B
Honolulu, Hawaii 96813
Telephone: 203-5436

Attorneys for Plaintiff
JOHN MCCAUGHEY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN MCCAUGHEY,<br><br>        Plaintiff,<br><br>    vs.<br><br>ANSALDO HONOLULU JV, a general domestic partnership; ANSALDO-STS USA, INC, a foreign profit corporation; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE UNINCORPORATED ORGANIZATIONS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10,<br><br>        Defendants.<br>_____ | ) CIVIL NO. 15-00400 LEK-RLP<br>) (Other Civil Action)<br>)<br>) PLAINTIFF'S MEMORANDUM IN<br>) OPPOSITION TO DEFENDANTS<br>) ANSALDO HONOLULU JV AND<br>) ANSALDO-STS USA, INC'S<br>) MOTION TO DISMISS<br>) COMPLAINT FILED ON OCTOBER<br>) 1, 2015; DECLARATION OF<br>) JOSEPH T. ROSENBAUM; EXHIBIT<br>) "A"; CERTIFICATE OF SERVICE.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## TABLE OF CONTENTS

**I.  INTRODUCTION**……………………………………………………………1

**II. FACTUAL SUMMARY**……………………………………………………...2

**III.   STANDARD OF REVIEW**……………………………………........11

**IV.   ARGUMENT**…………………………………………………………..14

    A. Mr. McCaughey Does Sufficiently Plead a Claim of Constructive
    Discharge Under *Parnar*…………………………………………………14

    **B.**  Mr. McCaughey Does Sufficiently Plead a Claim of Constructive
    Discharge and Therefore His Protected Conduct Caused His
    Resignation…………………………………………………..…………21

    C. Motion to Dismiss Herein Segued into a Motion for Summary
    Judgment………………………………………………………………….24

**V. CONCLUSION**………………………………………………………....25

## TABLE OF AUTHORITIES

**Federal Cases**

*Am. Family Ass'n Inc. v. City and County of San Fransisco*, 277 F.3d 1114, 1120 (9th Cir. 2002)…………………………………………………………...……..13

*Ashcroft v. Iqbal*, 129 S. Ct 1937, 1949 (2009)…………….…………….……..12

*Atlantic Corp. v Twombly*, 550 U.S. 544, 555 (2007)……………………………12

*Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988)*…………..12

*Batacan v. Reliant Pharmaceuticals,* 324 F.Supp. 2d 1144, 1145 (D.Haw. 2004).18

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996)……………..11,12

*Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)………11

*De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978), cert. denied, 441 U.S. 965 (1979)…………………………………………………………………………….13

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1507-08 (9th Cir.1990)………………………………………………………...……………..25

*Draper v. Coeur Rochester, Inc.,* 147 F.3d 1104, 1110 (9th Cir.1998)………..…22

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)…………….13,14

*Gompper v. VISX, Inc*., 298 F.3d 893, 898 (9th Cir. 2002)………………………14

*Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003)………………………......12

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).14

*Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009)…………………12

*Neitzke v. Williams*, 490 U.S. 319, 327, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989)………………………………………………………………………...……..13

*Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 712 (9th Cir. 2001)…..14

*Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991)…………...…..14

*Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1411 (9th Cir.1996)………….22

*United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981)…………….....13

*Watson v. Nationwide Ins. Co.,* 823 F.2d 360, 361 (9th Cir.1987)………...……..22

**State Cases**

*Parnar v. Amerciana Hotels,* 65 Haw. 370, 652 P.2d 625 (1982)…..14,15,16,18,21

*Ross v. Stouffer Hotel, Co. (Hawaii) Ltd, Inc.*, 76 Haw. 454, 464 879 P.2d 1037, 1047 (1994)……………………………………………………………….........15,18

*Smith v. Chaney Brooks Realty, Inc.*, 10 Haw. App. 250, 865 P.2d 170 (1994)………………………………………………………….......….15,16,18,19

*Watson v. Brown,* 67 Haw. 252, 256, 686 P.2d 12, 15 (1984)……………..……..16

**Statutes**

29 U.S.C. § 660(c)…………………………………………………………16,17,21

Haw. Rev. Stat. § 396-8(e)……………………………………..…….....17,20

Haw. Rev. Stat. Chapter 388…………………………………………18,19,20

Haw. Rev. Stat. § 378-2…………………………………………..……………..21

**Rules**

Fed R. Civ. P. 8(a)(2)………………………………………………………..12

Fed R. Civ. P. 12(b)(6)…………………………………………….......11,25

Fed R. Civ. P.  56………………………………………………………………25

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS ANSALDO HONOLULU JV AND ANSALDO-STS
USA, INC'S MOTION TO DISMISS
COMPLAINT FILED ON OCTOBER 1, 2015**

## I.   INTRODUCTION

Plaintiff  John McCaughey (hereinafter referred to as "Mr. McCaughey")

**opposes** and urges this Honorable Court to reject Defendants Ansaldo Honolulu JV

and Ansaldo-STS USA, Inc's (hereinafter collectively referred to as "Ansaldo

and/or AHJV") Motion to Dismiss (hereinafter collectively referred to as "Def.'s

Motion") for the following reasons:

1. Mr. McCaughey Does Sufficiently Plead a Claim of Constructive Discharge Under *Parnar;* and/or
2. Mr. McCaughey Does Sufficiently Plead a Claim of Constructive Discharge and Therefore His Protected Conduct Caused His Resignation

## II.   FACTUAL SUMMARY

As stated in Mr. McCaughey's Complaint filed on October 1, 2014

[hereinafter referred to as "Compl." which is attached to the Declaration of Joseph

T. Rosenbaum as Exhibit "A" and incorporated herein by reference], on February

18, 2015, Mr. McCaughey, a very experienced career Construction Health and

Safety Technician ("CHST"), certified through the U.S. Board of Certified Safety

Professionals, submitted his resume to Ansaldo by way of Jon Wagner of B-Safe

Consulting after seeing the AHJV website advertising subcontractor opportunities

for Safety & Security services. Compl. at ¶ 11. On March 19, 2015, MR. Mr.

McCaughey had his initial interview with Enrico Fontana and Chinnarao

Mokkapati of Ansaldo. *Id*. at ¶ 12. Mr. McCaughey was presented with Ansaldo

STS's "Recruitment Requisition Form" and the Honolulu Authority for Rapid

Transportation ("HART") Project Contract Construction Safety and Security Plan

including the section regarding Contractor Safety and Security Personnel

("CSSP"), which included the job description, duties & accountabilities on pages

40-42 for the Construction Safety & Security Manager ("CSSM") position of the

Safety and Security Oversight Team. *Id*. at ¶ 13.The HART Project Contract

Construction Safety and Security Plan on page 40 also clearly states: "The Safety

& Security Manager shall have *no other duties* than occupational safety, health and

security management on the contract." *Id*. at ¶ 14. This clearly means that *Mr.*

*McCaughey's sole and exclusive responsibility would be to oversee safety and*

*security on the HART Project*. *Id*. at ¶ 15. The CSSM was required to be on the

jobsite everyday that there was work being done. *Id*. at ¶ 16. Further, on page 42 of

the HART Project Contract Construction Safety and Security Plan it states that

AHJV is required to hire a Contractor Safety and Security Representative

("CSSR") for the time the CSSM is not on the job site to act in the capacity of the

CSSM. *Id*. at ¶ 17. Further, under the Ansaldo STS Honolulu Rail Transit Project

Core Systems Contract Site Safety and Security Plan, the CSSM "*will have no*

*other duties than occupational safety, health and security management under the contac*t." *Id*. at ¶ 18.

On April 30, 2015, Mr. McCaughey signed his Employment Letter at the AHJV Honolulu offices. *Id*. at ¶ 22. At this time Mr. McCaughey was provided with the AHJV Site Safety & Security Plan, including pages 14-16, which contains Mr. McCaughey's job description, duties, and accountabilities and that of the CSSR. *Id*. at ¶ 23.

On May 4, 2015, Mr. McCaughey began work as the CSSM and was at AHJV Honolulu offices all day reviewing documents /plans and human resources related forms (phone, laptop, vehicle, etc.). *Id*. at ¶ 24. From May 5, 2015 to June 16, 2015, Mr. McCaughey was onsite at Maintenance & Storage Facility ("MSF") in Pearl City, Hawai'i. Mr. McCaughey oversaw the mobilization of field office trailers and Watts Constructors activities. *Id*. at ¶ 25. On May 7, 2015, HART approved Mr. McCaughey's C.V. and AHJV's proposal to have Mr. McCaughey replace Jon Wagner as AHJV Construction Safety & Security Manager. *Id*. at ¶ 26.

On May 25, 2015, Mr. McCaughey received, via email, a GAP analysis for OHSAS 18001: 2007 related to the upcoming audit of Ansaldo for 18001/14001 audit and certification process. *Id*. at ¶ 27. This clearly had nothing to do with Mr. McCaughey's job description under the HART Project Contract Construction Safety and Security Plan and was outside the realm of Mr. McCaughey's sole and

exclusive duties under the HART contract. *Id*. at ¶ 28.

On June 1, 2015 Mr. McCaughey received an email with instructions to report his percentage of monthly hours spent on certification activities ***beyond*** the HART Project contractual requirements. *Id*. at ¶ 30. Mr. McCaughey was also sent the AHJV budget spreadsheet illustrating there was no intended budget for CSSR until the second half of 2017. *Id*. at ¶ 31. This clearly violated the HART Project Contract Construction Safety and Security Plan. *Id*. at ¶ 32.

On June 5, 2015, Mr. McCaughey receives an email which included Ansaldo-STS's organizational chart showing Mr. McCaughey as the CSSM for the HART project. *Id*. at ¶ 33.This email also informs Mr. McCaughey that he is in the "Ansaldo-STS Group Organization Chart (under HSE Italy/Coordinators)". *Id*. at ¶ 34. This also indicates that AHJV wanted Mr. McCaughey to perform duties other than those duties under the HART Project Contract Construction Safety and Security Plan that were supposed to be his sole responsibilities as the Construction Safety & Security Manager for the HART Project. *Id*. at ¶ 35.

On June 8, 2015, Mr. McCaughey receives an email again instructing him to participate in activities related to 18001/14001 audit and certification duties other than his HART exclusive and sole contractual obligations to the rail project as the CSSM. *Id*. at ¶ 36. Mr. McCaughey responded to the HART Project Manager, Enrico Fontana, that he could not accommodate this request. *Id*. at ¶ 37. Mr.

Fontana responded that Mr. McCaughey should "follow [his] colleague's requests and give them a draft..." *Id*. at ¶ 38.

On June 9, 2015, Mr. McCaughey had a telephone conversation with Mr. Fontana. *Id*. at ¶ 39. Mr McCaughey discussed with Mr. Fontana the severe issues regarding a subcontractor (Watts Constructors). *Id*. at ¶ 40. Mr. McCaughey conveyed that Watts Contactors was having problems under the HART Contract with basic Activity Hazard Analysis (AHA) requests and that Mr. McCaughey's contractual obligations lie with the HART Project per the HART CSSP and AHJV's SSSP. *Id*. at ¶ 41. Mr. McCaughey informed Mr. Fontana that he could not ethically participate in 18001/14001 audit activities and could not physically take on the HART CSSM requirements and the Ansaldo-STS "HSE Senior Advisor" role that included certification & audit requirements beyond the HART contract. *Id*. at ¶ 42. Mr. Fontana responded, "If I were you, I would make Alfredo happy, as he reviews your performance and determines your salary raises". *Id*. at ¶ 43.

On June 10, 2015, to provide AHJV further evidence that having Mr. McCaughey take on responsibilities outside his exclusive role under the HART Project Contract Construction Safety and Security Plan would be a **<u>violation of safety law</u>** Mr. McCaughey provided emails illustrating the degree of "reasonable care" required to monitor just one unsophisticated subcontractor (Watts Constructors). *Id*. at ¶ 44. It is clear under federal Occupational Safety and Health

Act (OSHA) Multi-Employer Worksite Policy law that AHJV as the "controlling employer" on the HART Project had a duty to exercise a "level of reasonable care" predicated upon the sophistication of safety awareness and practices of the subcontractors. *Id*. at ¶ 45. In the case of the HART Project subcontractors, such as Watts Constructors, they were so inexperienced and lacking in safety awareness that Mr. McCaughey felt that if he was to be performing duties outside his role as CSSM he would be complicit in the breach of contract with HART and violating OSHA law. *Id*. at ¶ 46.

On June 11, 2015, Mr. McCaughey had a video conference with Mr. Tommasone and two other representatives from Ansaldo STS regarding the ISO 14001/OHSAS 18001 audit and certification activities. *Id*. at ¶ 47. On the same day, Mr. McCaughey received an email from Ansaldo requesting more involvement with ISO 14001/OHSAS 18001 audit activities. *Id*. at ¶ 48. The video conference meeting minutes are inaccurate, as they do not include Mr. McCaughey's comments regarding his inability to participate in the audits preparations due to his obligations to the HART contractual requirements. *Id*. at ¶ 49. Mr. McCaughey informed Ansaldo that they needed to hire an HSE Advisor for USA to assist with the ISO 14001/OHSAS 18001 audit activities. *Id*. at ¶ 50. The video conference meeting minutes also illustrate AHFV intention to delegate safety oversight to Ansaldo's subcontractors which does not fulfill the obligation

of "reasonable care" under applicable safety law or the HART Project Contract

Construction Safety and Security Plan. *Id*. at ¶ 51.

On June 12, 2015, Mr. McCaughey had a telephone conference with Mr.

Fontana regarding the June 11, 2015 videoconference with Mr. Tommasone. *Id*. at

¶ 52. Mr. McCaughey informed Mr. Fontana that he had told Mr. Tommasone that

he could not involve himself in any duties other than HART contractual

obligations. *Id*. at ¶ 53. Mr. McCaughey also informed Mr. Fontana that Mr.

Tommasone did not acknowledge Mr. McCaughey's concerns. *Id*. at ¶ 54. Mr.

Fontana responded that Mr. McCaughey should ensure that Alessandro

Pasquariello does his job when he comes out in July to address the ISO

14001/OHSAS 18001 audit activities and certifications. *Id*. at ¶ 55. Mr.

McCaughey again told Mr. Fontana that was not his responsibility and in violation

of the HART contract, his job description and safety law. *Id*. at ¶ 56. Mr. Fontana

again repeated that it was in Mr. McCaughey's "best interest" to comply with

AHJV's request for him to do work outside of his exclusive role under the HART

contract. *Id*. at ¶ 57.

On June 15, 2015, Mr. McCaughey sent emails illustrating AHJV's &

Ansaldo STS's under-manning of the HART rail project. *Id*. at ¶ 58. Mr.

McCaughey requested information on how he could go about placing the required

CSSR on the jobsite, as required by the HART Project Contract Construction

Safety and Security Plan. *Id*. at ¶ 59. The AHJV Project Manager, Mr. Fontana, deflected Mr. McCaughey's inquiries to Mr. Alfredo Tommasone in Italy. No response came for twelve (12) days. *Id*. at ¶ 60.

On June 16, 2015, Mr. McCaughey received another email speaking to the reality that AHJV employees, including the CSSM, are tasked with finding qualified individuals to stand-in for them or else they cannot take paid time off. *Id*. at ¶ 61. On the same date, via email, Mr. McCaughey makes his first formal inquiry for clarification from AHJV/Ansaldo STS regarding his accountabilities, his required CSSR under the HART Project Contract Construction Safety and Security Plan that had not been provided, safety issues that could arise under the current non-compliance with the HART Project Contract Construction Safety and Security Plan and the required safety and security oversight team. *Id*. at ¶ 62. In a separate email, Mr. McCaughey provided his activities report to date. *Id*. at ¶ 63. Also on the same date Mr. McCaughey had a face-to-face meeting with Mr. Fontana regarding Mr. McCaughey's email to Mr. Tommasone dated June 16, 2015. *Id*. at ¶ 64. Mr. Fontana asked Mr. McCaughey, "Why are you using these documents (HART Project CSSP & AHJV SSSP) against us?" *Id*. at ¶ 65. Mr. McCaughey responded that he merely asked for clarification regarding his duties and hiring his CSSR as required under the HART contract. *Id*. at ¶ 66.

On June 24, 2015, Mr. McCaughey again wrote an email to Mr. Tommasone

in Italy addressing the non-response from Ansaldo in Italy and Mr. Tommasone

regarding Mr. McCaughey concerns that AHJV was violating safety law and the

HART Project Contract Construction Safety and Security Plan contract. *Id*. at ¶ 67.

In this email, in an attempt to rectify the issues he was having with AHJV and to

protect his own professional construction safety license, Mr. McCaughey proposed

that he become a subcontractor overseeing safety so that he could make sure that

he had the proper personnel under the HART Project Contract Construction Safety

and Security Plan, that the job sites were safe and Mr. McCaughey's license was

not at risk if a safety issue arose under his supervision. *Id*. at ¶ 68.

In an email dated, June 26, 2015, Mr. Fontana asks again, after numerous

verbal requests, if AHJV subcontractor's safety representative, Jane McKee, could

stand in for Mr. McCaughey upon his absence from the jobsite. *Id*. at ¶ 69. On June

27, 2015, via email, Mr. Tommasone responds to Mr. McCaughey prior proposal.

*Id*. at ¶ 70.

On June 28, 2015, via email, Mr. McCaughey responds to Mr. Tommasone's

email offering information regarding his and AHJV's duty of "reasonable care"

under the OSHA's multi-employer jobsite citation policy. *Id*. at ¶ 71. Mr.

McCaughey again provides the HART CSSP & AHJV SSSP duties for his

position. *Id*. at ¶ 72.

On July 1, 2015, Mr. McCaughey receives a response email from Mr.

Tommosone regarding Mr. McCaughey's June 28, 2015 email. *Id*. at ¶ 73.

On July 7, 2015, via an email to Mr. Tommasone, Mr. McCaughey again attempted to inform AHJV of their violations of safety law and the HART Project Contract Construction Safety and Security Plan and that he could no longer tolerate this violation of the law. *Id*. at ¶ 74. In his July 7, 2015 email Mr. McCaughey provides the following:

*"I have time and time again attempted to resolve the clear issues that I am having regarding my employment with Ansaldo Honolulu. If I have not been clear enough, let me be clear now.*

*Ansaldo Honolulu is clearly asking me to breach our contract with Hart by participating in activities that are not specific to the duties and responsibilities of the Ansaldo Honolulu CSSM. Additionally, Ansaldo Honolulu will also be in breach of HART's requirement to exercise Reasonable Care to prevent unsafe acts and conditions in our field activities. This could result in injuries and fatalities to AHJV personnel as well as to our subcontractor personnel, exposing us and the project to potential litigation.*

*If there is 'total consistency' between a CSSM bound with contractual obligations to the HART contract and your 'HSE Senior Advisor', why do I have two titles and why am I in an org chart here and an org chart in Italy? I was given at my initial interview with Enrico Fontana a job description specific to the HRT Project , found in the HART CSSP. I am bound to honor that, and so is AHJV.*

*At this point I feel like I am being pressured out of my position as I can no longer tolerate being even remotely complicit in these unethical activities. Additionally, as a certified safety professional, I have a code of ethics to honor.*

*I have attempted to resolve these issues with you to rectify and become compliant with HART contract requirements specific to the duties of my position as the AHJV CSSM and to our duty to Reasonable Care specific to U.S. OSHA Multi-Employer Jobsite Citation Policy. Nothing has been done. And your inattention and lack of response to my requests for Paid Time Off has been very disappointing.*

*I have offered a solution to your company, proposing a subcontracting relationship between us.  If I do not receive a response from you accepting this solution by 17 July, I will be forced to resign." Id*. at ¶ 75. On July 15, 2015, HART issued a notice to AHJV that included issues with a "Lack of on-site personnel". *Id*. at ¶ 76.

On July 17, 2015, after numerous attempts to rectify the illegal actions of AHJV, Mr. McCaughey could no longer tolerate being a complicit in the violation of the HART contract and safety law as he understood it. As such, Mr. McCaughey tendered his resignation. This was a constructive discharge. *Id*. at ¶ 77.

Mr. McCaughey filed the instant Complaint on October 1, 2014. *See* Ex. "A".

Mr. McCaughey's claims pertinent to the present Motion are as follows: Count I – Violation of Public Policy; Count II – Violation of HRS 378 Part V Whistleblowers' Protection Act; Count III – Intentional Infliction of Emotional Distress. *See* Ex. "A".

Mr. McCaughey now brings this memorandum in opposition to Ansaldo's Motion To Dismiss [hereinafter referred to as "Defs. Motion"] filed on October 13, 2015.

## III.   STANDARD OF REVIEW

### A.   <u>Motion to Dismiss</u>:
   **Disfavored, Construed in Light Most Favorable to Non-Moving Party and Requires Showing Plaintiff Has No Claim**

   <u>Basic Test</u>

A Federal Rules of Civil Procedure ("FRCP") 12(b)(6) motion tests the legal sufficiency of a claim. A claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S.

Ct. 99 (1957); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). In

deciding such a motion, all material allegations of the complaint are accepted as

true, as well as all reasonable inferences to be drawn from them. *Cahill*, 80 F.3d at

338. Dismissal is proper only where there is no cognizable legal theory or an

absence of sufficient facts alleged to support a cognizable legal theory. *Balistreri v.*

*Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988)*. The issue is not whether

the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer

evidence to support its claims. *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir.

2003).

The U.S. Supreme Court clarified the Fed R. Civ. P. 8(a)(2) requirements for

pleadings. Under Fed R. Civ. P. 8(a)(2), a pleading must contain a "short and plain

statement of the claim showing that the pleader is entitled to relief, but the pleading

standard does not require "detailed factual allegations". *See Ashcroft v. Iqbal*, 129

S. Ct 1937, 1949 (2009) and *Atlantic Corp. v Twombly*, 550 U.S. 544, 555 (2007).

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and

*Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-

conclusory factual content, and reasonable inferences from that content, must be

plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret*

*Service*, 572 F.3d 962, 969 (9th Cir. 2009). In essence, as the Ninth Circuit has

stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978), cert. denied, 441 U.S. 965 (1979). The Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiff's claims. Id.

It is axiomatic in the Noth Circuit that motions to dismiss for failure to state a claim upon which relief can be granted are "viewed with disfavor and rarely granted". *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Motions to dismiss complaint for failure to state a claim upon which relief can be granted are viewed with disfavor in federal courts because of possible waste of time in case of reversal of a dismissal of the action, and because primary objective of the law is to obtain a determination of the merits of any claim, and therefore a case should be tried on the proofs rather than the pleadings. *Id*. The Court must view the allegations of the complaint in the light most favorable to the non-moving party and must accept all material allegations – as well as any reasonable inferences to be drawn from them – as true. *Am. Family Ass'n Inc. v. City and County of San Fransisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). This is so no matter how improbable the facts alleged. *See Neitzke v. Williams*, 490 U.S. 319, 327, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).

A 12(b)(6) dismissal is proper only in "extraordinary" cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

Furthermore, Courts are free to grant a party leave to amend whenever "justice so requires," Fed. R. Civ. P. 15(a)(2), and requests for leave should be granted with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). "'Dismissal without leave to amend is improper unless it is clear… that the complaint could not be saved by any amendment.'" *Gompper v. VISX, Inc*., 298 F.3d 893, 898 (9th Cir. 2002) (quoting *Polich v. Burlington N., Inc*., 942 F.2d 1467, 1472 (9th Cir. 1991)).

IV.    ARGUMENT

    A. Mr. McCaughey Does Sufficiently Plead a Claim of Constructive Discharge Under *Parnar*

Mr. McCaughey can make a claim under *Parnar v. Amerciana Hotels,* 65 Haw. 370, 652 P.2d 625 (1982) for his constructive discharge in violation of public policy. A *Parnar* claim can be maintained when an employee has been discharged in violation of a clear mandate of public policy. *Parnar*, 65 Haw. at 380, 652 P.2d at 631. "The term "public policy" may comprehend "that which has a tendency to be injurious to the public or against the public good" and "whatever contravenes good morals or any established interests of society". *See Parnar* at 378, quoting

*Petermann v. International Brotherhood of Teamsters*, 174 Cal. App. 2d 184, 344 P.2d 25 (1959).

In Def.'s Motion at 7, Ansaldo only argues that Mr. McCaughey's *Parnar* claim fails based upon its erroneous reading of Mr. McCaughey's Complaint. Ansaldo reads the Complaint to state that Plaintiff ***only*** reported federal OSHA safety law violations to Ansaldo and that is the sole basis for Mr. McCaughey's *Parnar* claim. If this were true, which it is not, then Plaintiff's *Parnar* claim could possibly fail if there is a "sufficient remedy" for his wrongful discharge in the applicable federal workplace safety law that Mr. McCaughey reported violations of. *See Ross v. Stouffer Hotel, Co. (Hawaii) Ltd, Inc.*, 76 Haw. 454, 464 879 P.2d 1037, 1047 (1994); *Smith v. Chaney Brooks Realty, Inc.*, 10 Haw. App. 250, 865 P.2d 170 (1994). However, a reading of Mr. McCaughey's Complaint clearly shows that Mr. McCaughey, in part, bases his *Parnar* claim on the fact that he, on numerous occasions in both writing and verbally, reported violations of the contract between Ansaldo and the City and County of Honolulu *i.e.* the HART contract. Compl. at ¶¶ 37, 42, 44, 48-51, 53, 56, 58-59, 62, 66, 67, 74-75. As there is no statutory or regulatory provision that provides "a sufficient remedy" for Mr. McCaughey's constructive discharge for reporting violations of the HART contract by Ansaldo, Mr. McCaughey can maintain his *Parnar* claim on that basis.

Further, Ansaldo incorrectly argues that Mr. McCaughey's *Parnar* claim of wrongful discharge based on his reporting of violations of federal safety law cannot be maintained because *Parnar* is limited to situations where a remedy is not otherwise provided for the violation of public policy involved. While this general statement of law is true it is inapplicable to the current case. It is clear, and Ansaldo does not argue otherwise, that Mr. McCaughey pled in his Complaint that he reported violations of the federal Occupational Safety and Health Act (OSHA) Multi-Employer Worksite Policy law. Compl. at ¶¶ 44-46, 56, 67, 71, 75.

As a general rule, under *Parnar*, the common law remedy is precluded only when the statutory provision relied upon as a bar to the action provides a "*sufficient remedy*" in itself, making the creation of an additional common law remedy unnecessary (emphasis added). *Smith v. Chaney Brooks Realty, Inc.*, 10 Haw. App. 250, 865 P.2d 170 (1994). Our state's supreme court has generally recognized that a statutory remedy is "merely cumulative and does not abolish an existing common law remedy unless so declared in express terms or by necessary implication." *Watson v. Brown,* 67 Haw. 252, 256, 686 P.2d 12, 15 (1984).

Defs. Motion references the Occupational Safety and Health Act at 29 U.S.C. § 660(c) in support of its position that the statute provides a remedy that would preclude Plaintiff's *Parnar* claim.  29 U.S.C. § 660(c) does not cover Mr. McCaughey's conduct and does not provide a "sufficient remedy" for an employee

terminated for reporting violations of the federal Occupational Safety and Health

Act (OSHA) Multi-Employer Worksite Policy law ***to their employer directly***. 29

U.S.C. § 660(c) states in relevant part:

> (1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

Mr. McCaughey's reporting of safety violations ***to his employer*** and ***not to Occupational Safety and Health Administration itself*** does not fit under this

statute as Mr. McCaughey "never filed any complaint or instituted or caused to be

instituted any proceeding under or related to this chapter or has testified or is about

to testify in any such proceeding or because of the exercise by such employee on

behalf of himself or others of any right afforded by this chapter." 29 U.S.C. §

660(c) relates to a wrongful discharge for an employee instituting or participating

in a *filed* complaint to the Occupational Safety and Health Administration itself,

not for reporting violations to the employer, as Mr. McCaughey did.

Likewise, Haw. Rev. Stat. § 396-8(e), does not cover the actions of Mr.

McCaughey or provide a "sufficient remedy" as Mr. McCaughey was reporting

violations of the federal Occupational Safety and Health Act (OSHA) Multi-

Employer Worksite Policy law, which has no state law counterpart and therefore

17

the remedial scheme under Haw. Rev. Stat. § 396-8(e) is not "the statutory or regulatory provision which evidence the public policy." *Ross v. Stouffer Hotel, Co. (Hawaii) Ltd, Inc.*, 76 Haw. 454, 464 879 P.2d 1037, 1047 (1994). Under *Ross*, "[i]f… the statutory or regulatory provision which evidence the public policy themselves provide a remedy for wrongful discharge, provision of a further remedy under the public policy exception is unnecessary." *See also Batacan v. Reliant Pharmaceuticals,* 324 F.Supp. 2d 1144, 1145 (D.Haw. 2004).  In the instant matter, the federal Occupational Safety and Health Act (OSHA) Multi-Employer Worksite Policy law is the regulation that evidences the public policy, and therefore, for Ansaldo to prevail herein, it must have a provision to remedy wrongful discharge for reporting safety violations ***to the employer***. As stated *supra*, it does not. Therefore, Plaintiff can maintain his *Parnar* claim for wrongful termination based on reporting violations of the federal Occupational Safety and Health Act (OSHA) Multi-Employer Worksite Policy law.

Moreover, even if Haw. Rev. Stat. § 396-8(e) was "the statutory or regulatory provision which evidence the public policy" it does not provide a full and sufficient remedy for Mr. McCaughey. In *Smith v. Chaney Brooks Realty, Inc.*, there was a situation similar to the one in the present case. In *Smith*, an employee was terminated for inquiring into a payroll deduction under Hawaii Revised Statutes Chapter 388. HRS Chapter 388's purpose is to require that an employer

18

pay his employees at least twice each calendar month and to accurately inform the employee of the compensation due and pay that amount in full. *Smith v. Chaney Brooks Realty, Inc.*, 10 Haw. App. 250,260, 865 P.2d 170, 175.The law ensures compliance by (1) only allowing payroll deductions authorized by federal or state statute, by court process, or by written authorization from the employee (HRS § 388-6); and (2) requiring the employer to provide the employee with a written record listing the employee's gross earnings, deductions, net compensation, and date of payment (HRS § 388-7(4)). The statute also requires the employer to retain for six years a copy of the record furnished to the employee. *Id.*

The court in *Smith* held that, "discharging an at will employee for inquiring into the nature of and basis for the deductions the employer made from the employee's gross compensation would violate the clear mandate of Chapter 388's policy. Allowing the employer to discharge an employee who requests further information regarding apparently questionable deductions would effectively insulate the employer from the statute's requirements and sanctions." *Smith v. Chaney Brooks Realty, Inc.*, 10 Haw. App. at 261. Thus, the court allowed the employee to sue for wrongful termination under HRS Chapter 388.

Although HRS §§ 388-10 and -11 provide the employee with remedies for the employer's failure to fully compensate the employee, their terms do not provide relief for an employee discharged for attempting to assert his or her rights under

19

the statute. Instead, the statute authorizes the Director of the Department of Labor and Industrial Relations (Director) to enforce Chapter 388 through (1) administrative investigations and hearings; or (2) specific actions for penalties or for an injunction to halt the employer's business operation until he satisfies any judgment for unpaid wages (§ 388-9). Further, the employer is civilly liable to the employee for unpaid wages (§ 388-10(a)); and may incur criminal penalties (§ 388-10(b)). An employee is authorized to sue for unpaid wages (§ 388-11(a)); and certain categories of employees may assign their claims for unpaid wages to the Director for collection (§ 388-11(b)). *Id*. Haw. Rev. Stat. § 396-8(e)'s remedies are similarly insufficient.

Clearly, Chapter 388 provides remedies when an employer fails to pay an employee in full. Just as clearly, Chapter 388 does not, in itself, provide any remedy to an employee who has been discharged in retaliation for seeking to enforce his rights under the statute. The clearly established policy of Chapter 388 is to ensure that the employee is fully compensated and has available to him or her all the records necessary to accurately determine that full payment was made. *Id*. Likewise, Haw. Rev. Stat. § 396-8(e) has no language that would allow an employee to bring civil suit for loss of pay and compensatory damages. *See* Haw. Rev. Stat. § 396-8.

In *Ross*, the remedy for a violation of HRS § 378-2 was sufficient in that it provided equitable relief for Ross, individually. Under HRS § 378-2, Ross was entitled to equitable relief including backpay, so he was personally compensated for the discrimination that he faced at the hands of his employer. Haw. Rev. Stat. § 396-8(e) provides no such remedy for Mr. McCaughey in this case. All of the remedies provided in Haw. Rev. Stat. § 396-8(e) are insufficient in that they don't provide an adequate remedy to the affected employee. Mr. McCaughey, under the statutory scheme provided by Haw. Rev. Stat. § 396-8(e), cannot recover damages for the pain and suffering or the loss of pay he has experienced as a result of Ansaldo's intentional, illegal and immoral acts. Therefore, the remedy is not "sufficient" for this public policy violation.

In the alternative, Mr. McCaughey hereby requests leave to amend his Complaint to plead a claim based 29 U.S.C. § 660(c) and/or HRS § 396-8(e) if this Court holds that these statutes provide a "sufficient" remedy for Plaintiff's wrongful termination for reporting violations of federal OSHA Multi-Employer Worksite Policy law.

B.   Mr. McCaughey Does Sufficiently Plead a Claim of Constructive Discharge and Therefore His Protected Conduct Caused His Resignation

Under the Hawaii Whistleblower Act and *Parnar* Plaintiff can make a claim for wrongful discharge if he pled facts sufficient to show that he reported illegal actions and then was constructively discharged. Constructive discharge occurs

21

when, "looking at the totality of the circumstances, a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable …working conditions.'" *Watson v. Nationwide Ins. Co.,* 823 F.2d 360, 361 (9th Cir.1987) (alteration). "[I]n such cases the individual has simply had enough; she can't take it anymore." *Draper v. Coeur Rochester, Inc.,* 147 F.3d 1104, 1110 (9th Cir.1998). "Whether working conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign ***is normally a factual question for the jury***." *Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1411 (9th Cir.1996)(emphasis added).

To prove termination based on constructive discharge ***at trial*** a Plaintiff must show, per the Hawai'i Standard Jury Instructions Instruction 16.7 Constructive Termination  Due to Intolerable Working Conditions,:

1. Plaintiff's working conditions were so intolerable as to cause a reasonable employee to resign/retire; and
2. Defendant knew or reasonably should have known of the plaintiff intolerable working conditions; and
3. Plaintiff gave defendant a reasonable opportunity to remedy the intolerable working conditions; and
4. Defendant failed and/or refused to remedy the intolerable working conditions, which continued to exist up to the time of the plaintiff's resignation/retirement; and
5. Plaintiff resigned because of the intolerable working conditions.

Based on the low pleading standard stated *supra*, Mr. McCaughey has sufficiently pled constructive discharge under the Hawai'i Whistleblower Act and *Parnar*. Plaintiff has pled that he was being forced by his employer to be complicit

22

in violating the HART contract. Compl. at ¶¶ 37, 42, 44, 48-51, 53, 56, 58-59, 62, 66, 67, 74-75. The HART project is the largest construction project in the State of Hawaii's history and clearly being complicit in the violation of the HART contract would be intolerable to a reasonable safety manager on the project. Plaintiff sufficiently pled that he was forced to be complicit in violation of the federal OSHA Multi-Employer Worksite Policy law as the HART Project's CSSM. *Id*. at ¶¶ 44-46, 56, 67, 71, 75. This went on for over two (2) months even when Mr. McCaughey reported this to his employer and attempted to have the problems resolved. *See generally* Compl. at ¶¶ 24-75. ___*A reasonable person would have found this intolerable due to the fact that serious bodily injury or death of the construction workers on the HART Project could result from the violations Mr. McCaughey reported*___. No reasonable person could have stood by and been complicit in the serious violations of safety law and violations of the HART contract that governed the largest construction project in Hawai'i state history, which is paid for by the increased taxing of the citizens of the Island of O'ahu.

It is clear that Mr. McCaughey reported the HART contract violations and safety law violations to his employer and thus Ansaldo knew about his intolerable working conditions. This is not disputed. Moreover, Plaintiff requested that Ansaldo rectify the issues under the HART contract and the safety issues on at least eleven (11) instances. Compl. at ¶¶ 37, 39-43, 44-46, 49-50, 53, 56, 58, 62,

67-68, 71, 74-75. Ansaldo did nothing to rectify or change the intolerable working conditions Plaintiff was working under for approximately two (2) months. *See generally* Compl. at ¶¶ 24-75.

Towards the end of his employment Mr. McCaughey twice "proposed that he become a subcontractor overseeing safety so that he could make sure that he had the proper personnel under the HART Project Contract Construction Safety and Security Plan, that the job sites were safe and Mr. McCaughey's license was not at risk if a safety issue arose under his supervision." Compl. at ¶¶ 67-68, 75. This proposed solution was refused/ignored by Ansaldo, nothing was done to rectify the problems and these intolerable working conditions continued up until McCaughey's resignation. *See generally* Compl. at ¶¶ 24-75. Clearly, a reasonable construction project safety manager could not remain complicit in these safety violations when personnel safety and life were in jeopardy, let alone the jeopardy to Mr. McCaughey's safety license.

Ansaldo misleads the Court by arguing that Mr. McCaughey resigned his employment because Ansaldo would not make him a subcontractor. Def.'s Motion at 8. This is inaccurate. As stated *supra*, Mr. McCaughey proposed a subcontractor arrangement between him and Ansaldo solely in order for him to personally have control over and ensure compliance with the HART contract in regards to safety personnel and rectify the safety issues he saw being committed by Ansaldo.

Compl. at ¶¶ 67-68, 75. Ansaldo rejected this proposal. If Ansaldo would have rectified the issues Mr. McCaughey reported, Mr. McCaughey could have remained in his position without becoming a subcontractor. To be clear, Ansaldo's refusal to rectify the issues Mr. McCaughey reported under the HART contract and safety law led to Mr. McCaughey resigning due to intolerable working conditions, not because he was not made a subcontractor.

C.   <u>Motion to Dismiss Herein Segued into a Motion for Summary Judgment</u>

 If matters outside the pleadings are submitted, the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is treated as one for summary judgment under Federal Rule of Civil Procedure 56. *See* Fed.R.Civ.P. 12(b); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d 1496, 1507-08 (9th Cir.1990). Def.'s Motion attaches many documents that were not in the Complaint and/or referenced in the Complaint and are not "integral" to the Complaint. Therefore, Def.'s Motion should be segued into a motion for summary judgment. If that is the case, Mr. McCaughey requests time for discovery to oppose the aforementioned motion for summary judgment per Fed R. Civ P. Rule 56(d).

V.   CONCLUSION

 For the foregoing reasons, Defendants' Motion to Dismiss should be denied. To dismiss this action would be to condone the illegal acts of Ansaldo and allow Mr. McCaughey to continue suffering with no remedy as a result.

DATED:  Honolulu, Hawaii, November 30, 2015.

/s/ Joseph T. Rosenbaum
ELIZABETH JUBIN FUJIWARA
JOSEPH T. ROSENBAUM
Attorneys for Plaintiff
JOHN MCCAUGHEY