IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JOHN MCCAUGHEY,              )    CIVIL 15-00400 LEK-RLP
                             )
          Plaintiff,         )
                             )
     vs.                     )
                             )
ANSALDO HONOLULU JV, a       )
general domestic partnership,)
and ANSALDO STS USA, INC., a )
foreign profit corporation,  )
                             )
          Defendants.        )
_____)

**ORDER DENYING PLAINTIFF'S FED. R. CIV. P. 56(D) REQUEST
AND GRANTING IN PART AND DENYING IN PART DEFENDANTS'
<u>MOTION TO DISMISS COMPLAINT FILED OCTOBER 1, 2015</u>**

On October 13, 2015, Defendants Ansaldo Honolulu JV
("Ansaldo Honolulu") and Ansaldo STS USA, Inc. ("Ansaldo STS,"
collectively "Defendants") filed their Motion to Dismiss
Complaint Filed October 1, 2015 ("Motion"). [Dkt. no. 5.]
Plaintiff John McCaughey filed his memorandum in opposition on
November 30, 2015, and Defendants filed their reply on
December 7, 2015. [Dkt. nos. 9, 10.] This matter came on for
hearing on December 21, 2015. After careful consideration of the
Motion, supporting and opposing memoranda, and the arguments of
counsel, Defendants' Motion is HEREBY GRANTED IN PART AND DENIED
IN PART for the reasons set forth below.

**<u>BACKGROUND</u>**

Plaintiff filed his Complaint in state court on

October 1, 2015.  Defendants removed the action to this district
court based on diversity jurisdiction.  [Notice of Removal of
State Court Action to Federal Court ("Notice of Removal"), filed
10/6/15 (dkt. no. 1), at pg. 2.]

According to the Complaint, on February 18, 2015,
Plaintiff submitted his resume in response to an advertisement
for "subcontractor opportunities for Safety & Security services"
on the Ansaldo Honolulu website.  [Notice of Removal, Exh. A
(Complaint) at ¶ 11.]  At an interview on March 19, 2015,
Plaintiff received, *inter alia*, the Honolulu Authority for Rapid
Transit ("HART") Project Contract Construction Safety and
Security Plan ("HART Plan"),[1] which included a description of the
Construction Safety & Security Manager ("CSSM") position.  [Id.
at ¶¶ 12-13.]  According to the Complaint, the HART Plan stated
that:

-the CSSM "shall have **no other duties** than occupational safety,
     health and security management on the" HART Contract; [id.
     at ¶ 14 (emphasis in Complaint);]

-the CSSM must be on the job site every day that work is
     performed; [id. at ¶ 16;] and

-Ansaldo Honolulu is required to hire a Contractor Safety and
     Security Representative ("CSSR") for periods that the CSSM
     is not on site [id. at ¶ 17].

On April 29, 2015, Ansaldo STS orally offered Plaintiff the CSSM
position, and he signed an employment letter agreement ("Letter

---

     [1] The Complaint also refers to the HART Project Contract in
general ("HART Contract").

Agreement") in Ansaldo Honolulu's office the next day.  When he signed the Letter Agreement, he received the Ansaldo Honolulu Site Safety & Security Plan ("Ansaldo Honolulu Plan"), which also contained job descriptions of the CSSM and the CSSR.  [Id. at ¶¶ 21-23.]

Plaintiff began work on May 4, 2015.  On May 7, 2015, HART approved his curriculum vitae and Ansaldo Honolulu's proposal to have him replace the previous CSSM.  [Id. at ¶¶ 24, 26.]

Based on emails he received in late May 2015 and in June 2015, Plaintiff learned that: he was expected to perform duties regarding auditing and certification; he was expected to act as Ansaldo STS's CSSM – as opposed to only Ansaldo Honolulu's CSSM – for the Hart Project; he was part of Ansaldo STS's organization under the Health, Safety, and Environmental ("HSE") coordinators; and Ansaldo Honolulu had not budgeted funds for the CSSR position until the second half of 2017.  The Complaint asserts that the additional duties imposed upon Plaintiff were outside the scope of his job description and violated the HART Contract and/or the HART Plan.  [Id. at ¶¶ 27-28, 30-36.] Plaintiff informed Ansaldo Honolulu's HART Project Manager, Enrico Fontana, that Plaintiff could not ethically participate in the audit activities which he had been asked to do.  He also informed Mr. Fontana that it was not physically possible for him

to act as both the HART CSSM and the Ansaldo STS HSE Senior
Advisor – which included certification and audit requirements –
because those duties were beyond the scope of his position,
according to the position description in the HART Contract.  [Id.
at ¶¶ 37, 42.]  Plaintiff states that Ansaldo STS representatives
and Mr. Fontana continued to try to impose the additional duties
on Plaintiff on June 11 and 12, 2015.  Plaintiff continued to
take the position that he could not be involved in any duties
beyond the obligations described in the HART Contract because it
violated the contract as well as the applicable safety laws.
[Id. at ¶¶ 47-48, 50, 52-53, 55-57.]

On June 15, 2015, Plaintiff sent Mr. Fontana
information regarding Defendants' under-manning of the HART
Project, and Plaintiff requested information about how to get
funding for the required CSSR position.  Mr. Fontana directed the
matters to Alfredo Tommasone, who was in Ansaldo STS's office in
Italy.  [Id. at ¶¶ 58-60.]  On June 16, 2015, Plaintiff sent
Mr. Tommasone an email in which Plaintiff formally requested
clarification from Defendants regarding what he was accountable
for, the failure to hire a CSSR, and specific safety issues that
had arisen.  Plaintiff also met with Mr. Fontana to discuss
Plaintiff's email to Mr. Tommasone, and Mr. Fontana asked
Plaintiff why he was using the HART Plan and the Ansaldo Plan
against them.  [Id. at ¶¶ 62, 64-65.]  According to Plaintiff,

Mr. Fontana asked him on numerous occasions whether Jane McKee – a safety representative for Ansaldo Honolulu's subcontractor – could stand in for Plaintiff when he was not at the job site. [Id. at ¶ 69.]

On June 24, 2015, Plaintiff sent an email to Mr. Tommasone because Ansaldo STS had not responded to Plaintiff's concerns that Ansaldo Honolulu was violating the HART Plan and the applicable safety laws. [Id. at ¶ 67.] In that email, Plaintiff proposed that Defendants make him "a subcontractor overseeing safety," which he asserts would have allowed him to ensure that he had the personnel required under the HART Plan and would have protected his professional license if safety issues arose. [Id. at ¶ 68.] Plaintiff and Mr. Tommasone continued to exchange emails about the issues that Plaintiff raised, culminating in a July 7, 2015 email in which Plaintiff stated that he believed he was being pressured out of his position because he would not be complicit in Defendants' violation of the HART Contract and the applicable safety laws. He reiterated that he proposed the subcontractor arrangement as a solution to the problem, and he stated that, if his proposal was not accepted by July 17, he would be forced to resign. [Id. at ¶¶ 70-75.]

On July 15, 2015, HART gave Ansaldo Honolulu notice of various issues with the project, including a lack of on-site

personnel.  Plaintiff resigned on July 17, 2015.  He argues that
it was a constructive discharge.  [Id. at ¶¶ 76-77.]

        The Complaint alleges the following claims: wrongful
termination in violation of public policy, pursuant to Parnar v.
Americania Hotels, 65 Haw. 370, 652 P.2d 625 (1982) ("Count I");
violation of the Whistleblowers' Protection Act, Haw. Rev. Stat.
Chapter 378, Part V ("Count II"); and intentional infliction of
emotional distress ("IIED" and "Count III").  Plaintiff prays for
the following relief: a declaratory judgment that Defendants
violated his rights; special damages – including, but limited to,
back pay, font pay, and all employee benefits that he would have
received; compensatory damages – including, but not limited to,
general damages for mental or emotional distress; punitive or
exemplary damages; reasonable attorneys' fees and costs; pre-
judgment and post-judgment interest; appropriate injunctive
relief; the retention of jurisdiction over this case until
Defendants have filed reports proving their compliance; and any
other appropriate relief.

        In the instant Motion, Defendants argue that all of
Plaintiff's claims fail as a matter of law, and they urge this
Court to dismiss the Complaint with prejudice.[2]  In his

_____

        [2] At the hearing on the Motion, Defendants' counsel stated
that the Motion does not argue that amendment of Plaintiff's
claims would be futile.  However, the Motion did request that
Plaintiff's Complaint be dismissed with prejudice.  [Motion at
                                                    (continued...)

memorandum in opposition, Plaintiff argues that this Court must
convert the instant Motion into a motion for summary judgment
because Defendants ask this Court to consider materials beyond
the pleadings.  However, if this Court does so, Plaintiff asks
for time to conduct discovery pursuant to Fed. R. Civ. P. 56(d)
before this Court rules on the Motion.

**DISCUSSION**

I.   **Preliminary Issues**

        At the outset, this Court must determine whether it is
necessary to convert the instant Motion into a motion for summary
judgment.  As a general rule, this Court's scope of review in
considering a motion to dismiss is limited to the allegations in
the complaint.  See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d
992, 998 (9th Cir. 2010).  "[A] court may consider evidence on
which the complaint necessarily relies if: (1) the complaint
refers to the document; (2) the document is central to the
plaintiff's claim; and (3) no party questions the authenticity of
the copy attached to the 12(b)(6) motion."  Id. (citations and
internal quotation marks omitted).  Ordinarily, consideration of
other materials requires the district court to convert a motion
to dismiss to a motion for summary judgment.  Yamalov v. Bank of
Am. Corp., CV. No. 10-00590 DAE-BMK, 2011 WL 1875901, at *7 n.7

---

        [2](...continued)
2.]

(D. Hawai`i May 16, 2011) (citing <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 n.4 (9th Cir. 1998)).[3]

In addition to the Complaint, the Motion includes: Plaintiff's employment agreement; [Motion, Decl. of Enrico Fontana ("Fontana Decl."), Exh. B;] and various email correspondence [Motion, Decl. of Alfredo Tommasone ("Tommasone Decl."), Exhs. C-J]. According to Defendants, each of these documents is referenced in the Complaint. [Fontana Decl. at ¶ 2; Tommasone Decl. at ¶¶ 2-9.] Plaintiff argues that the documents attached to the Motion "were not in the Complaint and/or referenced in the Complaint and are not 'integral' to the Complaint." [Mem. in Opp. at 25.] This Court disagrees. After reviewing Defendants' Exhibits B-J and comparing them to the allegations in the Complaint, this Court FINDS that the Complaint refers to each document, and each document is central to Plaintiff's claims. Further, because Plaintiff's memorandum in opposition did not raise any challenges to the authenticity of Defendants' exhibits, this Court FINDS that no party questions the authenticity of Defendants' exhibits. This Court therefore CONCLUDES that it can consider Defendants' exhibits without converting the Motion into a motion for summary judgment.

Even if this Court was inclined to convert the Motion

---

[3] <u>Parrino</u> was superseded by statute on other grounds, as stated in <u>Abrego Abrego v. The Dow Chemical Co.</u>, 443 F.3d 676, 681-82 (9th Cir. 2006) (per curiam).

into a motion for summary judgment, it would not grant

Plaintiff's Rule 56(d) request.  Rule 56(d) states:

> If a nonmovant shows by affidavit or declaration
> that, for specified reasons, it cannot present
> facts essential to justify its opposition, the
> court may:
>
>> (1)  defer considering the motion or deny it;
>>
>> (2)  allow time to obtain affidavits or
>> declarations or to take discovery; or
>>
>> (3)  issue any other appropriate order.

"To obtain a continuance under Rule 56(d), the party opposing a

motion for summary judgment must make '(a) a timely application

which (b) specifically identifies (c) relevant information,

(d) where there is some basis for believing that the information

sought actually exists.'"  Kocsis v. Delta Air Lines, Inc., 963

F. Supp. 2d 1002, 1019 (D. Hawai`i 2013) (quoting Blough v.

Holland Realty, Inc, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009)).

Plaintiff submitted a declaration of counsel that

states, in pertinent part:

> If Defendant's instant Motion is segued into a
> motion for summary judgment, Plaintiff requests
> time to conduct discover [sic] under Fed. R. Civ.
> P. 56(d) to oppose said motion for summary
> judgment as Plaintiff has had no opportunity for
> discovery prior to the Rule 16 scheduling
> conference in this matter that is set for
> February 2, 2016.

[Mem. in Opp., Decl. of Joseph T. Rosenbaum at ¶ 3.]  The

declaration does not specifically identify the relevant

information sought, nor does it state the basis for Plaintiff's

belief that the information sought actually exists.  Thus,

Plaintiff has not established that Rule 56(d) relief is

warranted.

Plaintiff's Rule 56(d) request is therefore DENIED.

The Court now turns to the merits of Defendants' Motion.

## II.   Count I - the *Parnar* Claim

In Count I, Plaintiff alleges that his constructive

discharge violated public policy.  Plaintiff brings this claim

pursuant to Parnar, which established a "public policy exception"

to the at-will employment doctrine.  This Court has stated that,

in Parnar,

> the Hawai`i Supreme Court adopted a common law
> tort, whereby an individual may bring a claim
> against an employer if her discharge directly
> violates clear public policy.  The court
> explained,
>
>> Because the courts are a proper forum for
>> modification of the judicially created
>> at-will doctrine, it is appropriate that we
>> correct inequities resulting from harsh
>> application of the doctrine by recognizing
>> its inapplicability in a narrow class of
>> cases.  The public policy exception discussed
>> herein represents wise and progressive social
>> policy which both addresses the need for
>> greater job security and preserves to the
>> employer sufficient latitude to maintain
>> profitable and efficient business operations.
>> We therefore hold that an employer may be
>> held liable in tort where his discharge of an
>> employee violates a clear mandate of public
>> policy. . . .  Of course, **the plaintiff
>> alleging a retaliatory discharge bears the
>> burden of proving that the discharge violates
>> a clear mandate of public policy.**

10

> [Parnar, 65 Haw.] at 379-80, 652 P.2d at 631
> (footnotes omitted).  "Parnar claims can only be
> maintained in a 'narrow class of cases' where the
> judicially created wrongful discharge action is
> needed to effectuate the public policy at stake."
> Cambron v. Starwood Vacation Ownership, Inc., 945
> F. Supp. 2d 1133, 1141-42 (D. Hawai`i 2013)
> (citing Ross v. Stouffer Hotel Co., 76 Hawai`i
> 454, 879 P.2d 1037, 1047 (1994)).

Ritchie v. Hawai`i, Civil No. 14-00046 LEK-BMK, 2014 WL 4905336,

at *9-10 (D. Hawai`i Sept. 30, 2014) (emphasis added).

    In Parnar, the Hawai`i Supreme Court recognized that

the "meaning of the term 'public policy'" is "somewhat vague."

65 Haw. at 379, 652 P.2d at 630.  Thus, the supreme court

cautioned that:

> In determining whether a clear mandate of public
> policy is violated, courts should inquire whether
> the employer's conduct contravenes the letter or
> purpose of a constitutional, statutory, or
> regulatory provision or scheme.  Prior judicial
> decisions may also establish the relevant public
> policy.  However, **courts should proceed cautiously
> if called upon to declare public policy absent
> some prior legislative or judicial expression on
> the subject**. . . .

65 Haw. at 380, 652 P.2d at 631 (emphasis added).  The Hawai`i

Intermediate Court of Appeals has stated the term "public policy"

refers to "that principle of law which holds that no citizen can

lawfully do that which has a tendency to be injurious to the

public or against the public good."  Smith v. Chaney Brooks

Realty, Inc., 10 Haw. App. 250, 257, 865 P.2d 170, 173 (1994)

(brackets and citations omitted).

11

At the hearing on the Motion, Plaintiff's counsel argued that the HART Contract sets forth the public policy that is the basis for Plaintiff's Parnar claim. Plaintiff's position is that, as a matter of public policy, parties who enter into a municipal contract should comply with the terms of that contract. First, this district court has recognized that a plaintiff alleging a Parnar claim "must specifically allege what public policy is violated." Abbey v. Hawaii Emp'rs Mut. Ins. Co., Civil No. 09-00545 SOM-BMK, 2010 WL 1541868, at *6 (D. Hawai`i Apr. 15, 2010). Plaintiff's Complaint does not specifically allege that either the HART Contract or the HART Plan sets forth the public policy that his Parnar claim is based upon. Further, although there are references to the Occupational Safety and Health Act of 1970 ("OSHA"), see, e.g. Complaint at ¶¶ 45-46, the Complaint does not specifically allege that OSHA sets forth the public policy that is the basis for Plaintiff's Parnar claim. This Court therefore does not interpret the Parnar claim as relying on either OSHA or the corresponding state law governing occupational safety and health, Haw. Rev. Stat. Chapter 396.[4]

_____

[4] Because this Court does not interpret the Parnar claim as relying on either OSHA or Chapter 396, this Court does not reach the issue of whether either OSHA or Chapter 396 has a remedial scheme that protects Plaintiff from the alleged violation. See McCarthy v. Hawaiian Parasail, Inc., No. Civil 14-00310 LEK-RLP, 2014 WL 6749415, at *8 (D. Hawai`i Nov. 30, 2014) ("courts regularly reject Parnar claims where there is already a remedial scheme protecting the employee against the purported violation at
(continued...)

Even assuming, *arguendo*, that the Complaint can be
interpreted as specifically alleging that Plaintiff's <u>Parnar</u>
claim is based on the public policy set forth in either the HART
Contract or the HART Plan, this Court would conclude that Count I
fails to plead a plausible claim.  <u>See Ashcroft v. Iqbal</u>, 556
U.S. 662, 678 (2009) ("To survive a motion to dismiss, a
complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its
face.'" (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570,
127 S. Ct. 1955 (2007))).  Interpreting "public policy" in the
manner that Plaintiff argued at the hearing would violate the
well-established rule that <u>Parnar</u> claims are only available "in a
narrow class of cases."  <u>See Ritchie</u>, 2014 WL 4905336, at *10
(citations and quotation marks omitted).  Adopting Plaintiff's
interpretation would essentially equate a <u>Parnar</u> claim with a
breach of contract claim whenever a municipal entity is a party
to a contract.  Further, neither the general principle that
parties to a municipal contract should comply with the contract
nor any of the specific provisions of the HART Plan that
Defendants allegedly violated has the force of either "a
constitutional, statutory, or regulatory provision or scheme" or
prior case law.  <u>See Parnar</u>, 65 Haw. at 380, 652 P.2d at 631.

---

[4](...continued)
issue" (citing cases)).

This Court acknowledges that it can find "public policy" sufficient to support a _Parnar_ claim in other sources, but it must "proceed cautiously" in doing so. _See id._ Plaintiff's Complaint does not allege any ground that would prompt this Court to take such a step. This Court therefore CONCLUDES that, to the extent that Plaintiff's _Parnar_ claim relies upon the purported public policy evidenced by the HART Contract and/or the HART Plan, the claim fails to state a plausible claim.

Defendants' Motion is GRANTED insofar as Count I is HEREBY DISMISSED. The Motion is DENIED insofar as the dismissal of Count I is WITHOUT PREJUDICE because it is arguably possible for Plaintiff to cure the defects in his _Parnar_ claim by amendment. _See Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty._, 708 F.3d 1109, 1117-18 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." (brackets, citation, and internal quotation marks omitted)).

### III. Count II - the Whistleblowers' Protection Act Claim

Count II alleges that Plaintiff's constructive discharge violated Haw. Rev. Stat. § 378-62, which states, in pertinent part:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1)   The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:

(A)   A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or

(B)   A contract executed by the State, a political subdivision of the State, or the United States,

unless the employee knows that the report is false[.]

This Court must first determine whether Plaintiff has sufficiently alleged that his resignation was a constructive discharge.

In the context of a Title VII action, this district court has stated: "'Constructive discharge' occurs when an employer creates or permits working conditions 'so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'"   Mahoe v. Operating Eng'rs Local Union No. 3, Civil No. 13-00186 HG-BMK, 2013 WL 5447261, at *6 (D. Hawai`i Sept. 27, 2013) (some citations omitted) (quoting Penn. State Police v. Suders, 542 U.S. 129, 143 (2004)).   The Hawai`i courts also appear to follow this rule.   See, e.g., McClane v. Delta Airlines, Inc., No. 24651, 2005 WL 1706990, at *2 (Hawai`i Ct. App. July 22, 2005) ("To the extent that her complaint alleged a constructive discharge claim, the circuit

15

court properly dismissed that claim because . . . , as a matter of law, a reasonable person in McClane's position would not have felt she was forced to quit due to intolerable and discriminatory working conditions." (citing Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1411 (9th Cir. 1996)).

In reviewing Defendants' Motion, this Court assumes that the factual allegations in Plaintiff's Complaint are true, as long as the allegations do not "simply recite the elements of a cause of action" and they are sufficient "to give fair notice and to enable the opposing party to defend itself effectively." See Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014). Even with the benefit of this presumption, however, Plaintiff has not alleged that his working conditions were so intolerable that a reasonable person in his position would have felt compelled to resign. For example, Plaintiff alleges that he "felt that if he was to be performing duties outside his role as CSSM he would be complicit in the breach of contract with HART and violating OSHA law." [Complaint at ¶ 46.] OSHA regulations state that:

> (1) . . . as a general matter, **there is no right afforded by the Act which would entitle employees to walk off the job because of potential unsafe conditions at the workplace.** Hazardous conditions which may be violative of the Act will ordinarily be corrected by the employer, once brought to his attention. If corrections are not accomplished, or if there is dispute about the existence of a hazard, the employee will normally have opportunity to request inspection of the workplace pursuant to section 8(f) of the Act, or to seek the assistance of other public agencies which have

16

responsibility in the field of safety and health. Under such circumstances, therefore, an employer would not ordinarily be in violation of section 11(c) by taking action to discipline an employee for refusing to perform normal job activities because of alleged safety or health hazards.

(2) However, **occasions might arise when an employee is confronted with a choice between not performing assigned tasks or subjecting himself to serious injury or death arising from a hazardous condition at the workplace**. If the employee, with no reasonable alternative, refuses in good faith to expose himself to the dangerous condition, he would be protected against subsequent discrimination. **The condition causing the employee's apprehension of death or injury must be of such a nature that a reasonable person, under the circumstances then confronting the employee, would conclude that there is a real danger of death or serious injury and that there is insufficient time, due to the urgency of the situation, to eliminate the danger through resort to regular statutory enforcement channels.** In addition, in such circumstances, the employee, where possible, must also have sought from his employer, and been unable to obtain, a correction of the dangerous condition.

29 C.F.R. § 1977.12(b) (emphases added). Plaintiff's Complaint does not allege that he was asked to perform tasks which placed him at risk of either serious injury or death. This Court therefore concludes that he has not alleged facts that would support a constructive discharge claim based upon his assertions of OSHA violations. For similar reasons, to the extent that Plaintiff alleges a constructive discharge based on conditions that were unrelated to OSHA, this Court also concludes that the allegations do not describe conditions that were so intolerable

17

that a reasonable employee in his position would have felt
compelled to resign.  Thus, this Court CONCLUDES that Plaintiff's
claim under the Whistleblowers' Protection Act fails to state a
plausible claim for relief.

Defendants' Motion is GRANTED insofar as Count II is
HEREBY DISMISSED.  The Motion is DENIED insofar as the DISMISSAL
is WITHOUT PREJUDICE because it is arguably possible for
Plaintiff to cure the defects in this claim by amendment.

## IV.  Count III - the IIED Claim

Count III alleges that Defendants' actions – which
allegedly culminated in his constructive discharge –
"constitute[] extreme and outrageous behavior" sufficient to
support an IIED claim.  [Complaint at ¶ 88.]  In the instant
Motion, Defendants argue that Plaintiff's IIED claim is barred by
the exclusivity provision in Haw. Rev. Stat. Chapter 386, the
Hawai`i Workers' Compensation Law.  Haw. Rev. Stat. § 386-5
states:

> The rights and remedies herein granted to an
> employee or the employee's dependents on account
> of a work injury suffered by the employee shall
> exclude all other liability of the employer to the
> employee, the employee's legal representative,
> spouse, dependents, next of kin, or anyone else
> entitled to recover damages from the employer, at
> common law or otherwise, on account of the injury,
> except for sexual harassment or sexual assault and
> infliction of emotional distress or invasion of
> privacy related thereto, in which case a civil
> action may also be brought.

18

This district court has stated:

> In <u>Yang v. Abercrombie & Fitch Stores</u>, the
> Intermediate Court of Appeals of Hawaii held that
> this exclusivity provision bars suits against
> employers for alleged injuries suffered because of
> a plaintiff's employment that were caused by the
> alleged willful acts of co-employees acting in the
> course and scope of their employment.  128 Hawai`i
> 173, 284 P.3d 946, 956 (Haw. App. 2012).  The
> Hawaii Supreme Court, however, has declined to
> apply the exclusivity provision in section 386-5
> to claims based on discrimination.  <u>See</u> <u>Furukawa
> v. Honolulu Zoological Soc.</u>, 85 Hawai`i 7, 936
> P.2d 643, 654 (1997); <u>see also</u> <u>Bolla v. University
> of Hawaii</u>, 131 Haw. 252, 2014 WL 80554, at *2
> (Haw. App. 2014) ("Hawaii state courts have
> applied the HRS § 386-5 exclusivity provisions to
> [intentional infliction of emotional distress]
> claims, unless they arise out of sexual
> harassment, assault, or discrimination.").

<u>Aoyagi v. Straub Clinic & Hosp., Inc.</u>, Civ. No. 14-00285 ACK-RLP,

2015 WL 6457566, at *13 (D. Hawai`i Oct. 26, 2015) (alteration in

<u>Aoyagi</u>).

Plaintiff alleges that: 1) Defendants required him to

perform duties which he believed were beyond the scope of his

position, as governed by the HART Plan, the HART Contract, and

the applicable laws; and 2) he was constructively discharged

because he refused to perform those duties and he objected to the

violation of the HART Plan, the HART Contract, and the applicable

laws.  This Court CONCLUDES that Plaintiff's IIED claim is barred

by § 386-5 because the Complaint does not allege that his IIED

claim aries out of sexual harassment, assault, or discrimination.

Defendants' Motion is GRANTED as to Count III, which is HEREBY DISMISSED WITH PREJUDICE because this Court CONCLUDES that Plaintiff cannot cure the defects in his IIED claim by amendment.[5]

### CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss Complaint Filed October 1, 2015, which Defendants filed October 13, 2015, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as Counts I, II, and III are HEREBY DISMISSED, and insofar as the dismissal of Count III is WITH PREJUDICE.  The Motion is DENIED insofar as the dismissal of Counts I and II are WITHOUT PREJUDICE.

The Court GRANTS Plaintiff leave to file an amended complaint by **February 17, 2016**.  This Court CAUTIONS Plaintiff that, if he fails to file his amended complaint by **February 17, 2016**, or if his amended complaint fails to cure the defects identified in this Order, this Court may dismiss his claims with prejudice.  This Court also CAUTIONS Plaintiff that it has only granted him leave to amend Counts I and II to cure the defects identified in this Order.  He does not have leave to add any new

---

[5] If Plaintiff suffered other actions during his employment with Defendants that constitute sexual harassment, assault, or discrimination, an IIED claim based upon those actions would be a separate and distinct claim from the IIED claim alleged in Count III of the Complaint.  Such a claim would not be governed by the dismissal with prejudice.

parties, claims, or theories of liability.  If he wishes to add
new parties, claims, or theories of liability, he must do so
pursuant to Fed. R. Civ. P. 15(a).

        IT IS SO ORDERED.

        DATED AT HONOLULU, HAWAII, January 12, 2016.



                    /s/ Leslie E. Kobayashi
                    Leslie E. Kobayashi
                    United States District Judge

**JOHN MCCAUGHEY VS. ANSALDO HONOLULU JV, ET AL; CIVIL 15-00400
LEK-RLP; ORDER DENYING PLAINTIFF'S FED. R. CIV. P. 56(D) REQUEST
AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS COMPLAINT FILED OCTOBER 1, 2015**